**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WEN VAUGHN, *as Administrator of the* : | Civil No. 1:25-CV-00797 |
| *Estate of Robert Buch Enck*, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| PRIMECARE MEDICAL INC., *et al.*, : | |
| : | |
| Defendants. : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This case arises from the death of Robert Enck ("Enck"), who, at the time of

his death, resided at Dauphin County Prison.  The administrator of Enck's estate,

Wen Vaughn ("Plaintiff"), initially brought suit against dozens of defendants,

including Dauphin County, correctional officers, medical providers, and five

John/Jane Does.  Most of those defendants have been dismissed via stipulation.

Presently before the court is a motion to amend the complaint.  Plaintiff seeks to

reinstate one defendant and substitute certain individuals for five John/Jane Doe

defendants.  The motion is opposed.  To resolve the parties' dispute, the court must

determine whether amendment would be futile or prejudicial.  For the reasons that

follow, the court will grant in part and deny in part the motion.

### BACKGROUND

According to the complaint, Enck was incarcerated at Dauphin County

Prison from August 2022 until his death on May 7, 2023.  (Doc. 1, ¶ 23.)  Enck

1

allegedly suffered from schizophrenia, which was "evident and extreme." (*Id.* ¶¶ 24–25.) While at Dauphin County Prison, Enck allegedly experienced a deterioration of his health as a result of not receiving health checkups that he needed. (*Id.* ¶ 27.)

On May 7, 2023, a correctional officer found Enck unresponsive in his cell. (*Id.* ¶ 28.) Shortly thereafter, Curtis Bone, ("Bone") Joeinicole Barr, Jessica Nye, Christine Cilli, Shyasia Bailey, and Kathryn Sciotti (collectively, "Original Medical Defendants"), administered medical care. (*Id.* ¶ 30.) However, Enck died the same day. (*Id.* ¶ 31.) An autopsy revealed Enck died from complications of lung carcinoma and pneumonia. (*Id.* ¶ 32.)

About two years later, and one day before the statute of limitations expired, Plaintiff filed the complaint. (Doc. 1.) Plaintiff asserted claims, in relevant part, against Original Medical Defendants; their employer, PrimeCare Medical, Inc. ("PrimeCare"); PrimeCare's CEO Thomas Weber ("Weber" and collectively with PrimeCare, "Defendants"); and five John/Jane Doe medical providers. (*Id.* ¶¶ 35–41, 59–62, 72–79.) The claims include (1) a § 1983 claim for inadequate medical care in violation of the Due Process Clause, (2) negligence, (3) wrongful death, and (4) survivor action. (*Id.*)

On June 5, 2025, Attorney John Ninosky, ("Ninosky") entered an appearance for PrimeCare, Weber, Nye, and Sciotti; Ninosky's signature block

stated "Attorney for PrimeCare Defendants." (Doc. 7, p. 1.) [1] On July 30, 2025, Ninosky emailed Plaintiff's counsel Alan Denenberg ("Denenberg") to state that Original Medical Defendants responded only to Enck's May 7 emergency and were not involved in his regular medical care, except for Bone. (Doc. 64, p. 42.) According to Ninosky, Bone "saw" Enck in August and September 2022 but was not involved in his "treatment . . . in diagnosing cancer." (*Id.*) On August 8, 2025, the parties stipulated to dismiss Original Medical Defendants from the complaint without prejudice, Doc. 13, which the court approved, Doc. 14.

Plaintiff received PrimeCare's initial disclosures around July 31, 2025, and certain of PrimeCare's discovery responses around February 5, 2026. (Doc. 64, p. 4.) Plaintiff avers that "[t]hese records identify" Bone, Brianna Culp, Kyle Brim, Alicia Weader, Kayla Zeiders-Heichel, and Sarah Finogle (collectively besides Bone, "New Medical Defendants") as those who participated in Enck's regular medical care. (*Id.*) Plaintiff also avers that Enck's "medical records clearly show" that New Medical Defendants participated in Enck's pulmonary medical care. (*Id.*)

On February 27, 2026, Plaintiff filed a motion to amend the complaint, seeking to reinstate Bone and substitute New Medical Defendants for the five John/Jane Does defendants.[2] (Doc. 64, p. 5.) On March 12, 2026, Plaintiff filed a

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

[2] The deadline to file an amended complaint was February 27, 2026. (Doc. 63, p. 2.)

brief in support of the proposed amendment. (Doc. 67.) Defendants, in turn, responded with a brief in opposition on March 25, 2026. (Doc. 68.) Plaintiff filed a reply brief on April 8, 2026. (Doc. 69.) The court stayed the case management deadlines pending resolution of Plaintiff's motion. (Doc. 71.) The motion is ripe for disposition.

## JURISDICTION

The court has jurisdiction over Plaintiff's federal law claims, pursuant to 28 U.S.C. § 1331, and Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 "embodies a liberal approach to pleading." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006). Under Rule 15(a)(2), "a party seeking to amend a pleading more than twenty-one days after service of the pleading may only do so with the written consent of the opposing party or leave of the court, but the court 'should freely give leave when justice so requires.'" *Schwenk v. Garcia*, No. 21-cv-02079, 2023 WL 8359871, at *8 (M.D. Pa. Dec. 1, 2023) (quoting Fed. R. Civ. P. 15(a)(2)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

4

of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

ANALYSIS

Defendants argue three reasons justify denying the proposed amendment. First, they argue the claims in the proposed amended complaint are barred by the statute of limitations. (Doc. 68, p. 4–8.) Second, they contend that amendment would result in prejudice. (*Id.* at 8.) Third, they maintain that the proposed amended complaint inadequately pleads claims against Bone and New Medical Defendants. (*Id.* at 9–13.) The court addresses each argument in turn.

## A. Statute of Limitations

Amendment would be futile if the amended complaint would not survive a "motion to dismiss on the basis of the statute of limitations." *Garvin v. City of Philadelphia*, 354 F.3d 215, 222 (3d Cir. 2003). The statute of limitations for a § 1983 claim is "governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). In Pennsylvania, the limitations period "governing personal injury claims is two years." *Schwenk*, 2023 WL 8359871, at *9 (citing 42 Pa. Con. Stat. § 5524(7)). So, too, the Pennsylvania limitations period for wrongful death and survivor claims is two years. 42 Pa. Con. Stat. § 5524(2). As Defendants correctly note, the statute of limitations for any claims arising from Enck's death expired on May 7,

2025.  (Doc. 68, p. 2.)  The instant motion to amend was filed on February 27, 2026, well outside the relevant limitations period.  (Doc. 64, p. 2.)  Therefore, the proposed amendment will be timely only if it relates back to the original under Rule 15(c).  *Anderson v. Bondex Int'l, Inc.*, 552 F. App'x 153, 156 (3d Cir. 2014).

Under Rule 15(c), "relation-back . . . allows a court to treat a later-filed amended pleading as if it had been filed at the time of the initial pleading."  *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 344 (3d Cir. 2021).  It thus "can ameliorate the running of the statute of limitations."  *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001).  Relation back balances the defendant's interests protected by the statute of limitations "with the preference expressed in the Federal Rules of Civil Procedure . . . for resolving disputes on their merits."  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010).

Relation back is permitted "when an amendment to a pleading 'changes the party or the naming of the party against whom a claim is asserted.'"  *Moore v. Walton*, 96 F.4th 616, 623 (3d Cir. 2024) (quoting Fed. R. Civ. P. 15(c)(1)(C)).  Substituting an individual for a John/Jane Doe defendant "amounts to 'changing a party' within the meaning of Rule 15(c), and thus will only relate back if all three conditions specified in the Rule have been satisfied."  *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174 (3d Cir. 1977).  First, the claims against the new parties "must arise 'out of the conduct, transaction, or occurrence set out . . . in the

6

original pleading.'"  *Moore*, 96 F.4th at 623 (quoting Fed. R. Civ. P. 15(c)(1)(B)).

Second, within the Rule 4(m) period, the new defendant "must have 'received such

notice of the action that it will not be prejudiced in defending on the merits.'"  *Id.*

(quoting Fed. R. Civ. P. 15(c)(1)(C)(i)).  Third, within the Rule 4(m) period, the

new defendants "must have or should have known that 'but for a mistake' made by

the plaintiff concerning the newly named part[ies'] identit[ies], 'the action would

have been brought against' the newly named part[ies] in the first place."  *Id.*

(quoting Fed. R. Civ. P. 15(c)(1)(C)(ii)).

### 1.  Same Conduct, Transaction, or Occurrence

The parties do not contest that the claims in the proposed amended

complaint arose out of the same conduct, transaction, or occurrence set forth in the

original pleading.  In any event, this condition is satisfied when there is a

"common core of operative facts in the two pleadings."  *Anderson*, 552 F. App'x at

157 (3d Cir. 2014) (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d

Cir. 2004)).  Given the original complaint and proposed amended complaint assert

the same causes of action arising from the same factual circumstances, the court

easily concludes they share a common core of operative facts.  Therefore, Rule

15(c)'s first condition is satisfied here.  *See Bensel*, 387 F.3d at 310.

### 2. Notice

A newly added party must have received "actual or constructive notice of the institution of the action" within the Rule 4(m) period. *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). Notice of the events giving rise to the original complaint is insufficient. *Singletary*, 266 F.3d at 195. The Rule 4(m) period is 90 days following service of the original complaint. Fed. R. Civ. P. 4(m). Thus, Bone and New Medical Defendants must have received notice between May 6, 2025, and August 4, 2025. *See id.*

### i. Actual Notice

The parties do not dispute that Bone timely received actual notice of this action since he was named in the original complaint. (*See* Doc. 67, p. 6; Doc. 68, p. 5.) Accordingly, Rule 15(c)'s second condition is satisfied with respect to Bone. *See Alston*, 363 F.3d at 236.

### ii. Constructive Notice

Plaintiff does not argue that New Medical Defendants received actual notice. Rather, Plaintiff argues they received constructive notice. (Doc. 67, pp. 5–6.) There are two methods by which courts may impute notice in this context. *Garvin*, 354 F.3d at 222. First is the "identity of interest" method, and second is the "shared attorney" method. *Id.* at 222–23. Plaintiff argues that both methods apply here. (Doc. 67, p. 5–7; Doc. 69, p. 2–5.)

8

### a.  Identity of Interest

Plaintiff argues New Medical Defendants received constructive notice through the "identity of interest" method because they are employees at PrimeCare and in the same positions as Original Defendants.  (Doc. 67, p. 5–7.)  Defendants, in response, correctly point out that Plaintiffs misunderstand what the "identity of interest" method requires.  (Doc. 68, p. 8.)

To impute notice through the "identity of interest" method, the parties must be "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Garvin*, 354 F.3d at 223 (quoting *Singletary*, 266 F.3d at 197).  Simply being an employee of a defendant alone does not satisfy this standard.  *See Singletary*, 266 F.3d at 199 (holding prison psychologist, a staff-level employee, did not share an identity of interest with the prison).  Indeed, "'absent other circumstances that permit the inference that notice was actually received, a non-management employee . . . does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee." *Garvin*, 354 F.3d at 227 (quoting *Singletary*, 266 F.3d at 200).

Here, New Medical Defendants are non-managerial employees at PrimeCare.  Therefore, notice may not be imputed to them through the "identity of interest" method merely because PrimeCare was named in the original complaint.

9

So, too, co-workers do not share an "identity of interest" simply by being co-workers.  *See Peet v. Beard*, No. 3:10-cv-482, 2011 WL 5239197, at \*5 (M.D. Pa. Nov. 1, 2011) (holding correctional officer nurse did not share identity of interest with correctional staff).  Thus, notice will not be imputed to New Medical Defendants simply because they are Original Medical Defendants' colleagues.

### b.  Shared Attorney

The fundamental inquiry of the "shared attorney" method is whether "the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney . . . had some communication or relationship with, and thus gave notice of the action to, the newly named defendant."  *Singletary*, 266 F.3d at 196–97; *accord Garvin*, 354 F.3d at 223.  Plaintiff primarily argues that notice may be imputed to New Medical Defendants through the "shared attorney" method because "all available evidence suggests" Ninosky will represent them. (Doc. 69, p. 4.)  Plaintiff cites to *Jacobsen v. Osbourne*, 133 F.3d 315 (5th Cir. 1998), to support the proposition that the "shared attorney" method is satisfied when the attorney for the original defendants "would necessarily" represent the new defendants.  (Doc. 69, p. 3–4.)

Plaintiff fails to recognize that the Third Circuit has "distanced" itself from the Fifth Circuit's holding in *Jacobsen*.  *Garvin*, 354 F.3d at 227.  In this circuit, the inquiry "is not whether new defendants *will* be represented by the same

attorney, but rather whether the new defendants *are* being represented by the same attorney." *Riveros-Sanchez v. City of Easton*, 861 F. App'x 819, 823 (3d Cir. 2021) (emphasis in original) (quoting *Garvin*, 354 F.3d at 223).  Although a formal appearance is not required, evidence of some "communication or relationship" between the purportedly shared attorney and the new defendants is required. *Garvin*, 354 F.3d at 225.  Contrary to Plaintiff's argument, the "likel[ihood] [of] shared or collective representation" is not sufficient evidence of communication or a relationship. *Jackson v. City of Philadelphia*, No. 16-cv-3892, 2019 WL 883989, at *4 (E.D. Pa. Feb 22, 2019).

The two facts that, according to Plaintiff, supposedly show Ninosky will represent New Medical Defendants are also insufficient to show communication or a relationship between the two.  Plaintiff points out that Ninosky entered his appearance as "Attorney for PrimeCare Defendants."  (Doc. 69, p. 4.)  Entering an appearance for a party does not establish that the attorney is representing a non-party. *See Jeremiah v. Kovach*, No. 20-cv-01915, 2023 WL 8238686, at *4 (M.D. Pa. Aug. 4, 2023), *report and recommendation adopted*, 2023 WL 8238691 (M.D. Pa. Aug. 23, 2023) (declining to impute notice to newly named correctional-officer defendants despite attorney entering appearance on behalf of Northumberland County).  Plaintiff also insists that Ninosky is effectively representing New Medical Defendants because he is, "exclusively to their benefit," making

11

arguments to "prevent them from being added to this lawsuit." (Doc. 69, p. 4.) The court will not assume Ninosky represents New Medical Defendants based on this misguided observation. PrimeCare very well might have "an interest in preventing any delay in the litigation which could [be] caused by the addition of new parties" as well as "a financial interest in preventing . . . a potential [indemnification] obligation." *Garvin*, 354 F.3d at 224 n.12 (determining that city solicitor had good reason to oppose amendment and was not acting as "de facto" counsel for newly added defendants).

Plaintiff proffers a second argument, which is that the "shared attorney" method is satisfied here because Ninosky presumably investigated the claims in the original complaint and, in doing so, would have given notice to New Medical Defendants. (Doc. 69, p. 5.) Ninosky did, in fact, investigate the circumstances giving rise to this lawsuit, as evidenced by his disclosure that New Medical Defendants were involved in Enck's care. Yet, Plaintiff vaguely asserts that Ninosky disclosed this information either in the July 2025 initial disclosures or the February 2026 discovery responses, or both. (Doc. 64, p. 4.) Realistically, Ninosky likely disclosed New Medical Defendants' involvement in February 2026. If he had made such a disclosure in July 2025, Plaintiff presumably would have attempted to substitute in New Medical Defendants in August when the parties stipulated to dismiss Original Medical Defendants. At best then, Plaintiff has

12

submitted evidence that Ninosky may have communicated with New Medical Defendants around February 2026, long after the Rule 4(m) period expired on August 4, 2025.  The court will not accept Plaintiff's "invitation to pile assumption on top of assumption" to find that Ninosky communicated or had a relationship with New Medical Defendants during the 4(m) period.  *Garvin*, 354 F.3d at 227.

Ultimately, absent evidence giving rise to the inference that Ninosky had some communication or relationship with New Medical Defendants within the Rule 4(m) period, the court will not impute notice to them through the "shared attorney" method.  As a result, the proposed amendment would be futile with respect to New Medical Defendants on the basis that Plaintiff's claims against them are time barred.  *Anderson*, 552 F. App'x at 156.  Accordingly, the court will deny the motion to amend with respect to New Medical Defendants.

### 3.  Mistake

Defendants concede the mistake element is satisfied with respect to Bone. (Doc. 68, p. 7.)[3]  Accordingly, Bone satisfies the elements of relation back and, thus, the proposed amendment would not futile on the basis of the statute of limitations with respect to him.

---

[3] Defendants state that none "of the proposed additional defendants (other than Dr. Bone) knew that they would have been made a party to the action if not for a mistake in identity." (Doc. 68, p. 7.)

13

## B. Prejudice

Defendants contend that amendment will result in prejudice.  (Doc. 68, p. 8.) To establish prejudice, there must be a showing that amendment will result in unfair disadvantages or deprivations of chances to present facts or evidence. *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989).  Here, the court has stayed the case management deadlines, Doc. 71, and this case is still in the early stages of discovery.  As a result, Bone will not be unfairly disadvantaged or deprived of the chance to schedule additional depositions or obtain expert discovery.  *Wenneker Distilleries v. Olifant USA, Inc.*, No. 11-cv-01010, 2011 WL 5548004, at *2 (M.D. Pa. Nov. 15, 2011).  Further undercutting a showing of prejudice is that the original complaint and proposed amendment assert the same causes of action and Bone was an originally named Defendant.  *Fashion Novelty Corp. of N.J. v. Cocker Mach. & Foundry Co.*, 331 F. Supp. 960, 965 (D.N.J. 1971).  In light of these considerations, the court concludes that Defendants have not shown amendment will result in prejudice with respect to Bone.

## C. Failure to State a Claim

Finally, Defendants argue amendment would be futile because the claims in the proposed amended complaint are inadequately pleaded.  (Doc. 68, pp. 9–13.) The briefing on this issue was sparse and, in turn, the court would benefit from more comprehensive briefing on these issues.  *See Lau v. Ambani*, No. 16-cv-6288,

14

2017 WL 7693353, at *2 (E.D. Pa. Aug. 11, 2017).  Courts may decline to consider this type of futility argument under these circumstances, especially when other Rule 15 factors weigh in favor of amendment.  *Ortiz v. Callahan*, No. 21-cv-11146, 2022 WL 3588101, at *3 (D.N.J. Aug. 22, 2022); *Lau*, 2017 WL 7693353, at *2; *Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, No. 11-cv-0785, 2016 WL 6403081, at *2 (D.N.J. Oct. 27, 2016).  The court exercises that discretion here.

### CONCLUSION

For the reasons set forth above, the court will grant in part and deny in part Plaintiff's motion to amend. An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: July 27, 2026

15